Our next case up is 4080893, General Motors v. Stephen Delanoye, et al. Appearance of Jeff Jones. Yes, your honor. Okay. For the appellant and for the appellee, Richard Carr, Ira Levin, and John Schmidt. Who's going to be arguing? All three of us. Okay. Have you talked to the clerk about dividing up your time? Okay. I should mention also, counsel, that we ask everyone to be here early for oral arguments in case we can start early. You are all here. I want to thank you for that and it gives us a chance to start early accordingly. Okay, Mr. Jones, you may proceed, sir. Thank you, your honor. May it please the court, Jeff Jones. Counsel. By the way, excuse me for interrupting you before you begin, but we received notification of some discussions which have been going on between some of the parties in this case for resolution. Is that something to pay any attention to for us or not? Yes, your honor. Two of the parties have settled. Okay. So which two are they? Grossinger and Castle. So North Shore and Mitchell have not? Correct. And the state is still here? Correct. Okay. With that clarification, may I proceed? And just those two parties, Grossinger and Castle, had signed a release agreement and so that was the subject of a separate motion and that's why those two settled and the other two have not yet. Okay. I guess as I get a little bit older, your honor, I think more and more about cutting to the chase. Always a good policy. And I think there's a couple of things I think we can agree on. One is that attorney fee provision should be strictly construed. I think the board expressly agrees with that and I don't think there's a lot of debate about that, the Alexander case and others. Second is the provision should be read as a whole if we can. And third is we can look to legislative intent in certain cases if it is of some guidance. And your honor, I submit that if you look at the provision as an integrated whole and you take into account legislative history, the appellant should prevail on its interpretation. And I say that, your honor, as you read through the provision. It starts with a description of a violation that constitutes an unfair method of competition or an unfair deceptive act or practice declared unlawful by the act. Then a little bit later it uses the words, the misconduct. What does the misconduct refer to? I submit it refers back to the provision that started out that section. And then it refers to the unfair act or practice. It refers to that a couple of phrases later. The unfair act of practice. I submit that it refers back to the unfair act of practice that we started with. And then it says awarding attorney's fees incurred by the dealer in the litigation. The litigation. I submit that the litigation is referring back to the litigation over the unfair and deceptive acts and practices. And then it has this section that says when you're talking about the award of fees, whenever there's injunctive or other relief sought, then blah, blah, blah. That sentence is a timing sentence. It's a sentence about timing. What it's saying is, well, when have you substantially prevailed? In terms of when can you say, okay, now I can ask for my attorney's fees in a temporal sense. When judgment is entered. When a consent order is entered. When there's a board ruling, if affirmed. It's a timing provision. It tells us when can you ask for the fees. It doesn't tell you what. It's not a what sentence. The what sentence is what did you have to substantially prevail on? What? And I submit, Your Honor, the what is the unfair act, the litigation, and the deceptive act and practice that is integrated throughout that provision. It's the what. Their position is substantially prevails means substantially prevailed on anything. That doesn't make any sense, Your Honor. It doesn't make any sense. If we go to a court and we have a one-off claim and the court rules for you, but it has nothing to do with a violation, have I substantially prevailed? If I send a letter and the board does something and communicates something, have I substantially prevailed? It becomes an unworkable and unwieldy and an unconstitutional standard, I would submit. And then the provision ends, Your Honor, with the most clear language I can imagine. This is how it ends. Or when you cease. You know you can get these things when you cease the, it uses the again, when it ceases the conduct, act, or practice which is alleged to be in violation. It ends. It's almost like a bow is tied at the end of this provision. It talks about an unfair act of practice and violation of statute. It talks about the unfair act. It talks about the litigation. It talks about the misconduct. And it ends. It ends with the conduct, act, or practice alleged to be in violation. Your Honor, the integrated whole, if we're going to give weight to the integrated whole, it ties together perfectly. You have to substantially prevail on a violation of an unfair act or practice that would appear to be unlawful by the statute. It fits perfectly. I would submit, Your Honor, we could stop there. And if you didn't read, there's a lot of ways they could have structured the statute the way they're claiming. The legislature knows how to do that. They didn't. And then, so I submit the language is pretty clear. But if we were to say it's unclear, because this is one of those rare cases where they say, well, it's absolutely clear, we win. And we say, well, it's absolutely clear, we win. Well, the language can't be that clear to both parties. But in the manner in which I just walked through it, I respectfully submit that it is reasonably clear if we construe it as an integrated whole. But if we throw all that out the window and we say, you know what? I have no idea what this language means. I have no clue. No one has rebutted our legislative history. No one. The board did not try to do it at all in their brief, and the dealers made an argument which does not fly. And our legislative history, we painfully reconstructed this history. This came about because they wanted the Attorney General to enforce the unlawful violations of the Act or when something was about to become unlawful, when something unlawful was about to happen. And they had the Attorney General doing all of the work. And then the legislature decided, you know what? We don't want the Attorney General to incur all these costs, so we're going to substitute out the Attorney General. And we're going to let the dealers do it. And we're going to add a treble provision, and we're going to add attorney's fees. And we cited the legislative debates, and it said we've taken out the Attorney General and we've let the dealers recover attorney's fees for a violation of the Act. You seem to be speaking as if the Act should be viewed in two different ways. On the one hand, your position is General Motors did nothing wrong by merely going through the process saying we would like to have these two new franchises, and we went through all the hoops, and it was a good faith effort on our part. The Motor Vehicle Review Board turned us down. No harm, no foul. No one should be getting attorney fees for that. The attorney fee provision is intended for a different scenario where GM had done bad stuff. Can you give me an example of the bad stuff that you think that second example would cover? Well, there's like 20 different examples of unfair deceptive practices. First of all, arbitrary conduct, bad faith conduct, unreasonably withholding vehicles. And there's a whole series of unfair and deceptive practices, or not appointing a successor when you were supposed to appoint a successor, and all of those things. Well, I'm not sure. I'm not much of an expert on the car business, so I'm not sure that much of the things you just gave me are meaningful to me. So let me back off in this way. In the context of this statute, in the context of what we're talking about here, what would have been the bad practice, the stuff for which the legislature intended the automaker to be punished if you did this, as opposed to merely jumping through the loops in good faith and being told yes or no? Would it be, for instance, had GM decided you're going to establish these two dealerships without going through the hoops at all, would that have been what it was about? Absolutely. That would be one. I mean, the statute is very clear. It says it shall be an unfair act or practice to grant an additional franchise in a market. Period. So had you granted a franchise without going through the hoops, that would be better. Absolutely. I mean, under the statute. But then it's interesting the way the legislature constructed that provision. I would ask the court to study very carefully subsection 8 because it says to grant, and we all know to grant, you sign a franchise agreement, you give a dealership to someone, that's a violation. That would be an unfair act or practice. But it's very interesting when you look at 8 closely. It says that is the violation. That's the unfair act or practice. But it then says, however, comma. However, comma. That's the way that section is read, structured. However, if the manufacturer wishes to grant such an additional franchise, yada, yada, yada, give notice and we'll test whether or not it makes sense. And bear in mind again, Your Honor, these factors are not wrongful factors that people are looking at. I mean, there's 50 cases in this country that say more dealers are good for them, they help competition and so on. I'm not here to debate those. I'm just saying the question of whether you add another McDonald's or another dealership, there's a lot of great things that come from it. Employment and so on and so on. I mean, taxes. I mean, we've argued this many, many times. And, of course, there's an argument that says no, no, no, there's too many. But it's a very legitimate debate. It's a debate that we have in hearings and we debate the public interest and we debate the employment. We had two dealers here, Your Honor, who already had other GM line makes. They had other GM line makes. They were in the market. They wanted to add GMC. They wanted to add GMC because the country was moving to channeling where you had Buick and Pontiac and GMC together as three lines. So these two dealers wanted to add GMC to their deals. That's all GM did. We had two dealers in Illinois that wanted to add GMC to their existing GM dealerships. We thought it made sense. We had a hearing. There was a battle of the experts. The hearing examiner disagreed. But there's nothing evil or unlawful or wrongful. I mean, we were trying to benefit consumers in Illinois. We lost the hearing. But it's just a means of testing whether or not the market makes sense. And, Your Honor, I think when you sort of view it in its whole context, it just doesn't make sense to penalize this manufacturer or others, essentially hundreds of thousands of dollars. It would, in fact, discourage manufacturers from potentially benefiting consumers with the plan. And, again, I'm not saying the plan is right or wrong. Let the hearing examiner decide that. But let's not set up a system where we penalize you for guessing wrong. I know, Your Honor, there's a lot of constitutional cases out there. I would ask the court to consider this case is odd in that three things are at work. We have an innocent party. We're an innocent party. We complied with Illinois law. We have a unilateral fee provision. Only the dealers can take advantage of this fee. And we have the burden of proof. Now, Your Honor, we've cited a bunch of cases that say attorney's fees are unconstitutional in varying contexts. The Gulf case, the Supreme Court of the United States, the Gulf case from over 100 years ago was pretty close to on point. I know it's an old case, but it's pretty doggone close when you read that Gulf case. But when you take those three intersections, I don't see how anyone cannot see constitutional concerns. If I were to do an analogy where if I want to expand my house, I'm required to get a license from the state. I have to give notice to my neighbors. I carry the burden of proof for showing I can expand my house. And if my neighbors protest and I lose, I have to pay their attorney's fees. Now, I know we could spend a lot of time on the constitutional issues, but that is troubling to me. And there's a lot of case law that says it should be troubling. Now, I know the answer is, well, you have the rich guys and they are the little guys. Your Honor, first of all, that's just not true in this case. The profits of these dealers. You mean the car dealers and little old Matilda? Your Honor. Dealing with State Farm. It's not that kind of a. No. I mean, ironically, the manufacturer later went bankrupt. But the record in this case, one of these dealers, one of these dealers has an enormous operation. And I don't want to say the figures, but it's in the record. I mean, they have. Your Honor, just as a matter of public knowledge, I mean, AutoNation, the dealers these days are enormous companies with billions in revenue in some cases. The notion that this little guy somehow is always the little guy. There is no record of that to support this particular case. And Your Honor, let me tell you this thing. The board cited the marriage cases. And they cited those as really the only cases that's this unique combination of innocent parties being required to pay fees anyway. That's really the only good set of cases they argue for that. It's interesting when you look at those. First of all, those statutes said there had to be a showing that one spouse couldn't pay and the other spouse could. That was the rational relation that saved that statute. We don't have that here. If we had something here that said, if the dealer makes a showing it's unable to pay and the man is shown to be paid, that would be a different story. The other interesting thing about those marriage cases, Your Honor, is they're spouse neutral. They're spouse neutral. Husband or wife can take advantage. This is not party neutral. This is giving the dealers always the right, the unilateral right,  And the third thing that's interesting about those cases, Your Honor, is they're actually fighting over funds that presumptively are both theirs. I mean, that statute is trying to say, look, this is presumptively a pool of money. We don't want the husband or the wife restricting funds for an attorney while they're fighting over the allocation. But we don't have that here. These aren't presumptively our funds over which we're trying to allocate them. Imagine taking this principle a step further and yet a step further and we just create arbitrary classifications of people that can get a unilateral fee award to punish innocent conduct and put the burden of proof on the guy that's being penalized if he doesn't meet the burden to get the license. Regardless of all the merits and demerits of that theory, I respectfully submit that I think when you look closely at the cases, our constitutional argument is stronger than theirs. But regardless, I think we can all agree that we should interpret the statute to try to avoid constitutional infirmities. And I think when you interpret the statute as an integrated whole, does that mean I'm done? No. Okay, sorry. When you take the statute as an integrated whole and you take the legislative and you try to interpret the statute to avoid constitutional infirmities, if possible, there's only one interpretation that works and that is absolutely. If a manufacturer commits an unfair act of practice in violation of statute and the dealer approves it, they get attorney's fees. Absolutely. If they enter a consent order that does the same thing, absolutely. But not just if anything, it's not just in the air, devoid from any connection whatsoever. Let's just take the word consent order, Your Honor. Their interpretation says, well, when you substantially prevail on anything, including by way of a consent order, you get your fees. What does that mean? A consent order on what? A consent order doing what? That construction of the order makes no sense. It's a consent order that stops unlawful practices in violation of the act. That makes sense. When you have one of those, you get your attorney's fees. That makes sense. It fits. It fits the legislative history. It avoids the constitutional infirmities, and it interprets this statute as an integrated whole. The Lundgren case in Massachusetts, Your Honor, is really, really close. I know it's not 100% because they did have in violation there, and they make a fair point. But it's extremely close. What the court there found is this makes no sense, guys. We're not violating the statute. We're complying with the statute. We're doing what you asked us. We're giving the notice. We're having the hearing. That's not a violation. That is something that should not warrant attorney's fees. Okay. Thank you, counsel. You may proceed. Good morning, Your Honor. Richard Carr on behalf of North Shore Inc. Good morning, counsel. That was also known as Mueller's Pontiac. Let me, before you begin, a question I have for you and the others, just so I understand and convey my thoughts about this case. The statute provides a means by which General Motors, in a case like this, could request for additional franchises for GMC. General Motors went through the process, these various hoops, saying we'd like to have these additional franchisees, presented hearing, testimony, experts, and the board said no. What did General Motors do wrong? They made the decision to add the dealers. They made what? They made the decision to add the dealers. Well, no, they made the decision to request to add the dealers. They didn't add the dealers. I mean, I think it's an issue. So, merely utilizing the procedures set forth in the statute saying, we'd like to add dealers, there's these hoops to jump through, here's why we should do that, that's sufficient in itself to punish them with attorney fees? If you word it with those words and talk about it in terms of a punishment. Million bucks looks like a punishment to me. I'd answer absolutely yes. And I'd answer yes by saying, merely the fact that General Motors made the decision to add two dealers to the marketplace of these dealers forced these dealers to spend a million dollars in order to stop it. And if those dealers are not awarded attorney fees, they are punished to the tune of a million dollars by the wrong decision that they made. You know, that's the American rule as opposed to the English rule. And typically, there are lots of instances where we have attorney fees awarded. But almost in all of them, there's either the question of some higher calling the federal civil rights statutes, for instance, where that's an argument there. Or it's a question of just bad behavior. There's some misconduct almost present. I mean, I don't want to disagree with Your Honor, but I don't agree that there's some trend of cases where statutes grant attorney fees. I would say the majority, in my opinion, the majority of statutes where there's a statutory cause of action have an attorney fees clause. And there isn't a much precedent for a complex parsing of, well, here's a statutory action you have under the statute. I mean, this wasn't a common law action. This wasn't a contract action. It was a statutory action. Here's a statutory action that you have. Every statutory action that I'm aware of, almost all of them have attorney fees clauses. Almost all of them in that sense violate the American rule because I'm very familiar with the American rule. And I'm not aware of any other precedent which would be the result if you did what GM is proposing here where there's a parsing of the statute. Yes, you have a statutory action, but the decision to add franchises isn't what we're going to call wrong, something I want to elaborate on because I don't agree. I want to ask you also the same question I asked Mr. Jones. It seems to me his argument, and at first blush there seems to be some merit to it, is divided into two different categories. There's the category of one, we're just asking, and we had a hearing and we were turned down in good faith. Second was if you do bad stuff. And I asked, give me some examples of the bad stuff, and he did. Is he right? Well, if the legislature in their wisdom decided to parse the statute and say if you just make a decision which causes a hearing, you don't get legal fees, and if you do a wrong, which, by the way, and I want to elaborate on, I don't think there are many. There would be a tiny minuscule subset of the cases under the statute. Okay. But I don't have the slightest quarrel with the idea that if the legislature made that distinction and said where you've decided to terminate, because there are three main cases that are heard under the statute, termination cases, relocation cases, and new-born cases. Those are the majority of the case law. That's 90% of the cases. Mr. Jones is correct. There are theoretically other actions addressing a variety of delineated unfair acts under the statute, but the main three categories of cases heard are termination cases, relocation cases, and new-born cases. Every one of those cases under the statutory scheme involved the decision first. The General Motors, if they want to terminate a franchise, has to send a notice. They want to relocate, the franchise has to send a notice, and if they want to add a new point, has to send a notice. The hearing occurs. If the dealers win, the action doesn't happen. So what GM is arguing, in 98% of the cases heard by the board, attorney's fees were not intended by the legislature. I think that's an impossibly odd assumption to make, that the legislature created the board. Clearly, in nobody disputes, put in an attorney's fees clause. In 99% of the other cases where there's a statutory remedy with an attorney's fees clause, the attorney's fees applies to anybody who wins. There's not this parsing of what's a wrong and is a decision a wrong or a level of wrong or whatever, and you get legal fees. But in this one unique statute in Illinois, now saying that 98% of the cases are cases where that wrong, as GM is choosing to define it, won't have occurred, that the dealers will nevertheless have to, in this case, go through a 19-day hearing and spend almost a million dollars, the legislature, they're saying, didn't intend that those dealers would get legal fees. All but, I wanted to say all but, killing the statute. Because can this court imagine any dealer objecting to dealer, to General Motors adding these points, knowing that they'd have to spend a million dollars in order to do it? I mean, I don't think it was totally fair, but GM talked about the dealers aren't such little guys. They were actually referring to the other dealer. My client is a little guy. The record shows my client was barely profitable. And these statutes about adding these points, and it's right in the legislative history. It's the core of the legislative history. If GM wrongly decides to add dealers to markets that are too close to other dealers, they can wipe them out. And this statute was passed to allow my client to stop GM before they did it, from adding two dealers near his market that could have the effect of wiping him out. And GM fought so hard and so obtusely and with such complicated statistics that they'd worked up to justify this incredibly wrongheaded decision they made to add these dealers to this market. But the dealers collectively had to spend almost a million dollars to do it. Well, if there wasn't an attorney's fees clause, the section might as well be wiped out. But, you know, could the legislature have made this distinction? Yes. Did the legislature make this distinction? No. And you've got to look both – and you've got to – Bring your hands up and I'll let you finish your thought. The one point where I want to make is there isn't even any support for this parsing in the language that GM is relying on. The sentence that awards attorney's fees has nothing about a violation. It simply says, moreover, for the purposes of the franchisee getting fees, the franchisee gets fees if he prevails. There's no mention of a violation. Thank you, counsel. All right. We'll hear from Mr. Schmidt next. Thank you. Thank you very much, Your Honors. May it please the Court. Counsel. John Schmidt for the Attorney General's Office of the Motor Vehicle Board. I'm only taking four minutes. I was going to very briefly address the constitutional issues. And one thing I would remind the Court is this is rational basis review. We don't have a situation where this is strict scrutiny, no national origin classification. We don't even have intermediate scrutiny. So if the legislator could have conceived a rational reason for the fee shifting, it should be upheld on constitutional grounds. And I think many of the cases Mr. Jones cites are older cases that were decided before the United States Supreme and Illinois Supreme Court developed the three-tiered system of review that now exists. And I think the purpose of the statute really illustrates the rational basis. The purpose is to protect dealers who are generally considered to be in an inferior financial position to the manufacturers. And I think that's why we have this fee shifting situation here. And there is a rational basis for the legislature to reach that conclusion generally. Yes, in this situation we have a manufacturer who did file a Chapter 11 petition. But under rational basis review, there does not have to be a perfect fit between the means used and the end. The legislature can legislate generally, which is what it did here. And one other thing I would point out is that the Motor Vehicle Franchise Act and similar franchise acts in at least 30 other states did not come out of nowhere. They came out of a situation where the legislatures at least perceived that there was a history of abuses by automotive manufacturers against dealers. And that's the context for laws like this. And the legislature could have rationally concluded in that situation that it was appropriate to shift fees in this situation where the manufacturer initiates the desire to open new dealerships and that in order to stop that the dealers must protest here. And I think a case like this where the dealers did incur such heavy fees, it also illustrates why the fee shifting position was put into place. It can be a very severe burden on dealerships to have that imposition of fees. One case that the GM relied on was the Crocker case where a $5 fee for marital dissolution petitions was used to fund domestic violence. In that situation the Supreme Court concluded that was arbitrary because marital status wasn't really related to domestic violence. Sometimes it was unmarried partners who engaged in domestic violence. Here the fee is being shifted to a party that did have quite a bit to do with the fact that fees were incurred. The manufacturer caused the fees to be incurred in every case where the fees are shifted. And I'll sit down. I see the red light, unless there are questions. Thank you, counsel. Thank you, Your Honor. Mr. Levin? Is that pronounced correctly? Levin. Levin. Good morning, and may it please the Court. Good morning, counsel. We were here earlier a few years ago, as you may or may not recall. And, Judge, you had a statement in part of the opinion that you wrote in that case that the role of the Court was to simply enforce the statute is limited to enforcing the statute itself as written. And I think that what's seemingly lost in this is that this case, which also down below came here and then went up to the Supreme Court, the Supreme Court agreed that there is, in fact, a purpose of this Act to address the disparity in the bargaining power between dealers and manufacturers. And they ruled in the underlying merits of this case in that regard. That section of the Act, 1.1, which tells us that it's vital to this State to regulate manufacturers and dealers under its police powers is what sets out and addresses the protection of the investments, the substantial millions of dollars invested by dealers in this State, which creates jobs and which creates revenues that are very important to the State's welfare. We then get to a case like this where the Legislature decides, let's create a board. It's not really the place for the courts to look at this first. Let's create a special board and let's add a provision for those kinds of cases, termination, relocations, ad point cases, the kind of cases that Mr. Carr said these were typically here. And let's add a provision for fees to the party that substantially prevails. I don't think under any argument that you can hear from General Motors that you can... But it's not the party that substantially prevails, only if the dealer, correct? The dealer substantially prevails, that's correct. And that is related to this disparity in bargaining power, which both has been said before this Supreme Court, and that's the purpose of this statute. Whether you want to say who's big or little at this time, and I would disagree with that characterization that GM gave us. But the bottom line is that the statute was written and changed by the Legislature to create this particular vehicle to suggest that after 19 days of trial, an appeal to the Illinois Supreme Court, that at the end of that GM wasn't effectively enjoined from adding these dealers and that we, the dealers, didn't substantially prevail, would be a complete misreading of this statute. I can't imagine another statute... Well, what about the question I asked Mr. Carr? Did they do anything wrong? Well, Judge, they... First of all, there's no bad faith requirement or wrong. And if there were, you'd lose, wouldn't you? Because there's some showing that they did bad... I mean, let me back up. There's a structure in place that the Legislature's provided that says GM can't just willy-nilly like Pizza Hut or other franchises, as far as I know anyway, they could just go and decide to put this in wherever they want. GM can't do it because whatever, says the State of Illinois, they have to go to this franchise. There's this procedure to do it. They utilize the procedure. They had a hearing. They presented evidence in good faith. I take it. There's no claim this was frivolous. And they lost. What did they do wrong here? Well, Judge, they did lose and they lost resoundingly across the board. But what happens in the process is they make a decision to grant an additional franchise. The signing of the dealer agreement, which they try to make a distinction of, is just a formality in this process. They grant that franchise to somebody who they say, let's add another piece to your dealership that already exists when these other dealers are in that same marketing area. They know it's a violation of the statute to in fact do that unless they can show good cause. And then what happens is, of course, they don't put the dealer in because they have to provide this notice. But they've all but granted that franchise at that point in time. And it's simply, here's the notice. If you guys decide to protest, we have to prove good cause. They didn't prove good cause. So they couldn't establish or win or prevail under this statute and the way it's set up. And there's nothing about Section 13 that says anything more than if we prevail, we get our fees. And that's the fee shifting provision that ultimately is what the legislature set up. And I don't think there's any reading of that unless you want to use new words and change the statute, which GM is suggesting they want to do.  Well, here's the problem I have with this argument, counsel. And it's an argument that exists as if the first, I think, three or four sentences of the statute didn't exist that you're making. Then you pick up the fourth sentence. A motor vehicle dealer, if it is where the franchisee or dealer substantially prevails, the board shall warrant attorneys' fees and costs. So the expert fees and so forth. But the argument you're making ignores all the stuff that precedes that, where they're talking about declared unlawful, talking about the unfair deceptive practice, unfair method of competition. This is language from the sentences which immediately precede that, that if we accept your interpretation, are rendered meaningless. Because you would have us read the statute beginning with, if the franchisee or dealer substantially prevails, and reading out that first part. Now, if I'm misunderstanding your argument, explain how that first part still prevails or still is important with the substantially prevails link. That first part is, first of all, we have to read the statute as a whole, obviously. This section included within it. That first part refers back to unfair practices which are identified, including Section 4E, under which this case arises. And all that does is then create a remedy under those sections, which the legislator directs you then to go to that section. 4E connects to that section, and then you read through that section. It's as simple as that. They can create extra hoops or obstacles, but they don't exist. All it says within that is once you go from 4E to this, a franchisee or dealer will be considered to have prevailed when a judgment is entered in its favor, when a final administrative decision is entered in its favor and affirmed, if subject to judicial review, when a consent order is entered into, and they go on. That's simply the mechanism to get to Section 13. And that's how this case arises. It arises under 4E. So I don't think there's anything complicated about how we go from the first section, under which we have to file a protest after they've made their decision, to get to 4E. And there's never been any challenge before on this issue. And I don't think the legislature, as we've said before, we're not here to rewrite the statute. We're here simply to apply the statute as it's written. And I don't think there's any other application of it that could be applied. Okay. Thank you, Counsel. Thank you. Mr. Jones? Thank you, Your Honor. I think the fact that the statute uses the phrase the court or arbitration panel or board in conjunction addresses Counsel's argument. It's clear that the statute is saying court or arbitration panel or board if you substantially prevail. But when you're talking about the court and the arbitration panel, it's patently clear that it's referring to the prior language of that provision, and the same applies to the board. It uses court, panel, or board. It's absolutely clear that for court and panel it incorporates the prior language. The same must be true for the board in order to read it as an integrated whole. If you read the hearing examiner's opinion, it is absolutely clear there's no wrongdoing. This opinion is almost 100 pages long, and it just says this expert said this and this expert said this. It repeatedly says GM's expert used standards in the industry for its analysis or variations on that theme. And don't forget, this all started with two dealers, two dealers wanting to add a line mate. They already were in the market. They already had GM lines. They just wanted to add GMC. But we had to become the spokesperson by statute for getting the two dealers their additional line mates. Counsel said it would kill the bill. No, it wouldn't. There's other states where they have protest provisions and you don't get attorney's fees, and dealers file protests. Counsel said other states have provisions like this. They do. Look at Massachusetts. The Massachusetts statute reads very, very similar to this one. And the Massachusetts Supreme Court said, no, we're not going to give attorney's fees when you comply with the statute 100% and you use the test for whether you can proceed. Counsel said, well, they'll incur a lot of attorney's fees. That's the American rule. Yes, litigants do incur attorney's fees if they sue and lose. And there are exceptions to that. But they should be strictly construed and they should be read in light of the legislative history and the provisions as a whole. And I submit that if you take all of those into account, their interpretation does not withstand analysis. Counsel also said that 98% are this or that. I'm not quite sure where those statistics come from. There's lots of protests in front of the board. I have another one that's not any of those. But in any event, it's also interesting to note the termination provision is different than the at-point provision. The termination provision says it shall be a violation if you do X, Y, and Z. The at-point provision is structured very uniquely. It says if you grant it in a market, that's a problem. However, if you wish to, then go through this procedure. It's just like getting a license. It's just like getting a license. And if we're going to interpret the statute to say any person can protest, you're getting a license from the government that you're required to get, and then you have to pay the fees of those who protest against you to fulfill the requirement of the state, that is a constitutional problem. It really is, I think, particularly given the law. If you look at all of their cases on the constitutional issues, almost every one, Furlong, was an unfair termination. Sanderson was a refusal by the insurance company to make payments required by the Act. Cullohan was an unlawful withholding of records. Krochkik was a consumer that had shown there was a violation of the law with bad faith. Almost every case they cited, when you look at it closely, there's some wrongful conduct or there's some violation of something. Something. There's something unlawful. We don't have that here. There is no unlawful conduct. We had two dealers who wanted to add a line make. We thought that their request made sense. We sent out the notices we were required to do. Both parties turned this hearing into the hearing that it became. We wanted it to be a short hearing, but it became a longer hearing. And if we interpret the statute I submit that the way the legislature originally intended back in 1979, when it went from an AG to an attorney fee provision, it was saying if you violate the statute, you get your fees. Thank you, counsel. I take this minute of advisement in being recessed.